HOGAN VS. THE STATE OF WISCONSIN.

CRIMINAL LAW: (1.) *Authority of police justice in drawing grand jury.* (2.) *Clerks' indorsement of indictment, when sufficient proof of its return into court.* (3.) *Judge's name need not appear in indictment.* (4.) *Murder a common law offense in this state.* (4–8.) *Sufficiency of indictment to sustain conviction.*

1. Under a charter which declares that a certain *police justice* shall have "all the authority, powers and rights of a justice of the peace in civil and criminal proceedings," such police justice has the authority of a justice of a peace in respect to the *drawing of a grand jury,* as defined in section 8, chapter 118, R. S.

2. The indictment in this case (for murder) has endorsed thereon the usual certificate of filing, of an appropriate date, signed by the clerk of the court; and the clerk's minutes contain the following entries, after due specification of venue, title of the cause, and term: "Indictment for murder presented by the grand jury, and filed, and recorded on Book of Indictments on page 3." *Held,* that the record sufficiently shows the indictment to have been *returned into court* by the grand jury.

3. It is not necessary that the name of the judge holding the term, should appear in the indictment.

4. In this state, murder is treated as a common law offense, and not merely as a statutory offense.

5. Under an indictment for murder (regular in other respects) which avers that the killing was committed by defendant "feloniously, wilfully and of his malice aforethought," but does not aver that it was committed "with premeditated design to effect the death " of any person, the accused, upon a proper verdict, may be convicted of murder in either the *second* or *third* degree, as defined by our statute. (Tay. Stats. 1826.)

6. *It seems* that such an indictment would sustain a conviction of murder in the *first* degree if the jury should find the accused guilty of that degree of the crime. DIXON, C. J., dissents as to this point, holding that to sustain such a conviction the crime must be charged as defined by the statute.

7. But under a general verdict of " guilty," the indictment not charging in apt words any particular *degree* of murder, there cannot be a conviction of murder.

8. The effect of the reversal of judgment upon an indictment and verdict thus defective, is to award a new trial in order that, if the defendant be found guilty, the degree of criminality may be ascertained.

9. Per LYON, J., *arguendo*. *It seems* that under a general indictment for manslaughter, not specifying in apt terms the particular *degree* thereof, the accused may be convicted upon a general verdict of " guilty;" the statute containing a general provision for the punishment of manslaughter. (Tay. Stats. 1839, § 30.)

ERROR to the Circuit Court for *Manitowoc* County.

The plaintiff in error was convicted in the Circuit Court of Manitowoc County, of the crime of murder, and was sentenced to imprisonment for life. He sues out a writ of error to review the judgment below. The opinion states the case.

*Gillet & Taylor*, for plaintiff in error.

*The Attorney General*, for the state.

LYON, J. At the June Term, 1868, of the circuit court for the county of Manitowoc, the plaintiff in error was indicted for the crime of murder, and at the June term, 1870, of the same court, he was tried upon such indictment, convicted and sentenced by the court to imprisonment in the state prison for life. He has sued out a writ of error to obtain here a review of the judgment of the circuit court. No bill of exceptions has been settled and returned, and therefore the evidence given on the trial is not before us. Many objections to the validity of the indictment, and also to the validity of the proceedings in the case, have been argued with great ability by the learned counsel for the plaintiff in error, and are relied upon to reverse the judgment of the circuit court. These objections, or such of them as it is deemed material to notice, will be considered in the order here indicated, and the facts of the case applicable to each objection, so far as such facts are disclosed by the record, will, for convenience, be stated in the appropriate connection.

I. It is claimed that there is no valid indictment against the plaintiff in error, for the following alleged reasons : 1st, because it was not found by a legal grand jury ; 2d, because the record does not show that the indictment was delivered into

court; and 3d, because the same is fatally defective in that it does not show the name of the judge who presided in the court at the term when the same was found.   These objections to the validity of the indictment will be considered in their order.

1st. The plaintiff in error interposed a plea in abatement of the indictment, averring therein that the grand jury which found the indictment, was illegally drawn.   Issue was taken upon the plea by the state and the same was tried by the court. The finding by the court upon such issue is to the effect, that such grand jury was drawn by the clerk of said circuit court, in presence of the sheriff of Manitowoc county, and of one William G. Eldridge, who was then the police justice of the village of Manitowoc, in said county.   The court held that the grand jury was legally drawn.

The statute then in force required the clerk of the court to draw the names of the persons to be summoned to serve as grand jurors, "in the presence of the sheriff or under sheriff, and *a justice of the peace*."   R. S., chap. 118, sec. 8.   Such is still the law, without doubt, should a circuit judge order a grand jury to be drawn and summoned, as he may lawfully do. Taylor's Statutes, 1330, §§ 13 and 14.

Conceding that the indictment is invalid and no lawful conviction can be had thereon unless the grand jury which found it was drawn in presence of a justice of the peace, the question to be determined is, whether the police justice of the village of Manitowoc is a justice of the peace within the meaning of sec. 8, above cited, or rather, is he clothed by law with the power and authority of a justice of the peace, for the purposes contemplated by that section?   The charter of that village provides for the election of a police justice therein, whose term of office, like that of a justice of the peace, is two years, and provides also that "The police justice shall have and possess all of the authority, powers and rights of a justice of the peace in civil and criminal proceedings, and shall have sole and exclusive jurisdiction to hear all complaints and conduct all exam-

inations and trials in criminal cases within the village, to which the village may be a party, and shall have exclusive jurisdiction in all cases to which the village shall be a party, cognizable before a justice of the peace, and shall have the same power and authority in cases of contempt as a court of record." Pr. and Local Laws of 1868, chap. 335, sub-chap. 5, sec. 6 ; Id., sub-chap. 3, sec. 3.

The whole question evidently turns upon the meaning which is given to the term "proceedings," in the charter. If it be construed to mean, as counsel for plaintiff in error contends, only the proceedings in an action, it seems to follow that the police justice was not authorized by law to witness officially the drawing of the grand jury. We are referred to the language of Judge Gardner in *Morewood v. Hollister*, 6 N. Y., (2 Seld.), 309, as sanctioning this restricted construction of the word "proceedings." But an examination of that case will show that the court gave the broadest possible construction to the word. An act provided that, "whenever any authority shall be exercised by any officer, pursuant to any provisions " of a certain title, "the *proceedings* may be removed into the Supreme Court by *certiorari*, and there examined and corrected." On a certiorari, pursuant to such law, the Supreme Court held that only such proceedings as were jurisdictional could be thus "removed, examined and corrected." The Court of Appeals held that the term "proceedings " as used in the act, meant " *all* the matters connected with or attending the exercise of the power, which are necessary to enable the court of review to determine its validity and correctness."

The counsel also claims that Webster defines the word "proceedings " thus: " The course or steps or measures in the prosecution of actions," etc. This is doubtless correct when the word is used only in reference to actions, and not in a general sense. But I do not find this definition in Webster. Neither do I find that he gives any definition which necessarily restricts the word to particulars, when it is used in a general sense, and

it is evidently so used in the law specifying the powers of the police justice, with the single limitation that the proceedings must be either of a civil or criminal character. All proceedings in a court of justice are either civil or criminal, and hence the drawing of a grand jury, which is a proceeding in a court of justice, is either a civil or criminal proceeding within the meaning of the law just mentioned. Had the legislature intended to restrict the powers of the police justice to proceedings in *actions*, it was very easy to so provide, but instead of enacting such a limitation upon the powers of that officer, the law, in general terms, confers upon him the powers possessed by justices of the peace, " in civil and criminal proceedings." Not having imposed in terms the limitation contended for, it is reasonable to infer that the legislature did not intend to do so. But were this otherwise, it would not be very absurd to hold that the drawing of the grand jury, which found the indictment against the plaintiff in error, was a proceeding in the action or criminal prosecution against him. I prefer, however, to rest the decision of the question upon the broader grounds above indicated.

I am of the opinion, therefore, that the police justice of the village of Manitowoc, is vested by law, with the power and authority of a justice of the peace, in respect to the drawing of a grand jury, and hence, that the indictment is not invalid, because the former officer, and not the latter, participated in the drawing of the grand jury by which it was found.

2. Does the record show that the indictment was delivered into court by the grand jury? I think that this question must be answered in the affirmative. There is endorsed upon the indictment the usual certificate of filing, signed by the clerk, as follows : " Filed June 25th, 1868." Then we find in the minutes of the clerk of the circuit court, which I suppose is a part of the record, the following entry : " State of Wisconsin, Manitowoc county, circuit court. State of Wisconsin agst. John Hogan. June term, 1868. Indictment for murder, presented

by the grand jury, and filed and recorded in book of indictments, on page 3."

It seems to me that these entries are sufficient to show that the indictment was properly returned into court by the grand jury, and it has not been thought necessary to examine the authorities cited by counsel, to demonstrate that unless the record shows that the indictment was so returned, the indictment is invalid, and no conviction upon it can be sustained.

3. The remaining question on this branch of the case is, whether the omission to state the name of the judge who held the court at the term when the same was found, is fatal to the indictment. If it was necessary to give the name of the judge, the proper place to insert it was in the caption to the indictment. The requisites of a good caption have frequently been stated by this, and by the former Supreme Court, and it is quite unnecessary to look farther in order to determine this question.

The rule to be deduced from the cases cited below is, that if it sufficiently appear before what court the prisoner was charged, and that the indictment was presented by a competent grand jury, which was duly summoned, impaneled, tried and sworn, it is sufficient. All of these facts sufficiently appear in the caption to the indictment under consideration. There does not seem to be any good reason why the name of the judge who happens to hold the term, should be stated. The term at which this indictment was preferred, might have been lawfully held by either one of the eleven circuit judges then in the state, and I cannot perceive that it is of the slightest importance whether that term was held by Judge McLean or by some other one of those judges. But further discussion of the question seems unnecessary, and I content myself by merely giving references to the cases in this state above mentioned. *State v. Delue,* 1 Chand., 166; *State v. McCarty,* 2 id., 199; *State v. Gaffrey,* 4 id., 163; *Fitzgerald v. The State,* 4 Wis., 395; *Allen v. The State,* 5 id., 329; *Benedict v. The State,* 12 id., 313; *Byam v. The State,* 17 id., 145.

I conclude, therefore, that there is no legal objection to the indictment. This disposes of the first branch of the case.

II. The remaining branch of the case relates to the validity of the judgment and sentence.

The indictment contains but a single count, and is in the usual common law form of an indictment for murder. That is to say, it contains the usual averments of time, place and means, and avers also that the murder charged was committed by the plaintiff in error, " feloniously, wilfully and of his malice aforethought," but fails to charge in express terms that it was perpetrated from a premeditated design to effect the death of the person killed, or of any person. The verdict was a general one of " guilty," without finding the particular degree of murder of which it convicted the plaintiff in error.

A very important question presented by this record for determination, is, could the court lawfully proceed to judgment and sentence on the verdict ?

The statutes of this state, defining and· punishing the crime of murder, are as follows :

" § 1. The killing of a human being, without the authority of law, by poisoning, shooting, stabbing, or any other means, or in any other manner, is either murder, manslaughter, excusable or justifiable homicide, according to the facts and circumstances of each case.

" § 2. Such killing, when perpetrated with premeditated design, to effect the death of the person killed, or of any human being, shall be murder in the first degree ; and the person who shall be convicted of the same, shall be punished by imprisonment in the state prison during the life of the person so convicted.

" When perpetrated by an act eminently dangerous to others, evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual, shall be murder in the second degree, and shall be punished by imprisonment in the state prison for life.

Hogan vs. The State of Wisconsin.

" When perpetrated without any design to effect death, by a person engaged in the commission of any felony, shall be murder in the third degree, and shall be punished by imprisonment in the state prison not more than fourteen nor less than seven years." Taylor's Statutes, 1826.

Except that, in 1853, the punishment for murder in the first degree was reduced from death to imprisonment for life, such has been the law of this state, concerning the crime of murder, ever since the enactment of the Revised Statutes of 1849.

An examination of the above statutes will show, that murder in the first degree, is the unlawful killing of a human being with *express* malice aforethought, that is, with premeditation and deliberation, while murder in the second and third degrees is such unlawful killing with *implied* malice aforethought, that is, the malice which the law implies from the depraved mind and recklessness of human life in the one case, and from the felonious act in which the slayer is engaged, in the other case. Laying aside, for further consideration, the question, whether any conviction for murder, with express malice or murder in the first degree, can be had on this indictment, it seems very clear, under all the authorities, (and they are very numerous,) that it is sufficient to sustain a conviction for murder, either in the second or third degree. After a very diligent search, I have been unable to find a single adjudged case to the contrary in any state in which, as in this state, murder is recognized, treated and punished as an offense by the common law. In some of those states where the procedure in criminal cases is purely statutory, as is believed to be the case in Ohio, Iowa and Indiana, and, perhaps, in some others, a different rule may prevail.

The indictment under consideration, fails to show by apt and proper averments, the degree of murder charged against the accused. The general verdict of guilty necessarily fails to establish the degree of guilt. It is quite impossible to ascertain from the indictment and verdict whether the jury found

the plaintiff guilty of one degree of murder or another degree. Yet the court has assumed that he was, at least, found guilty of murder in the second degree, and has adjudged him to suffer the punishment which the law has affixed to that degree of criminality. It may be that the jury only found the accused guilty of murder in the third degree, and that they intended nothing more by the verdict. In that case the accused should be imprisoned for a term not more than fourteen nor less than seven years. But the court has in effect adjudged him guilty of the crime in the second degree, at least, and has sentenced him to imprisonment for life. Thus it may be that he is being punished for a degree of crime, of which he has never been convicted. It seems to me that there cannot be any rule of law, the application of which can possibly lead to such a result. The court must be able to say from the indictment and the verdict together, what is the precise crime of which the accused has been convicted; and where a crime has been divided into degrees, and the punishment thereof graduated according to the degree, the court must in like manner, be able to determine the degree of such crime, or no valid judgment can be pronounced. In many of the states, their statutes require the jury to find the degree of murder of which they convict the accused, and in those states, probably nothing would excuse the omission so to find. But in this state, where we have no such statutory provision, it is probable that a general verdict of guilty on an indictment which, by apt and proper averments charged a particular degree of murder, and but one degree thereof, would be sufficient to sustain a judgment and sentence for the punishment affixed to that degree; for in such case the court would be informed by the indictment and verdict, of the specific degree of murder of which the accused had been convicted. But, as we have already seen, we have no such case before us. We have here no data from which we can determine whether the plaintiff in error has been convicted of murder in the second degree, for which he is undergoing punishment, or of murder in

the third degree. Under these circumstances, I have no doubt whatever, that this judgment which consigns the plaintiff in error to the state prison for life, when it cannot be demonstrated by the record that he has been convicted of any crime or degree of crime to which that fearful penalty is by law affixed, is erroneous and should be reversed.

The authorities are almost uniformly in accord with the views here expressed. Indeed, I find but two cases which hold the opposite doctrine. These are the cases of *Fitzgerald v. The People*, 37 N. Y., 413; and *Kennedy v. The People*, 39 Id., 245. The doctrine laid down in those cases is well stated by Judge Woodruff, in his opinion in the latter case. He there declares that under an indictment for murder, substantially in the form of the indictment in this case, "there may be a conviction of murder in the first degree, or in the second degree" (there being but two degrees of murder in that state), "or of manslaughter, according to the description of the act given and proved; and that the statute is not a rule of pleading, but a guide to the conduct of the trial, and to the instructions to be given to the jury; and *therefore*, that a general verdict of guilty as charged, is a conviction of murder in the first degree, and warrants a sentence of death, its legal penalty."

From the doctrine of these cases, I must be permitted to dissent. I may, perhaps, agree that the statute is not a rule of pleading, but a guide to the conduct of the trial, and to the instructions to be given to the jury; but I am quite unable to perceive how any such conclusion as that stated by the learned judge, can be logically deduced from the premises. How a general verdict of guilty, on an indictment which does not show the degree of the crime, but which will sustain a conviction of murder in either degree, can be held to be a conviction of murder in the first degree, is beyond my comprehension. What argument or reason can be urged in favor of that view, that is not equally as good to maintain the proposition that such general verdict is only a conviction of the second or third degree

of the offense? I know of none. Indeed, the latter proposition seems more in accordance with the humane principle of our law, which, in favor of life or of liberty, resolves all reasonable doubts in favor of the accused.

I do not care to comment further on these cases in New York. Believing that they cannot be sustained upon principle, I choose rather to adopt the doctrine laid down in nearly all of the adjudications in this country upon the subject, and I hold, therefore, that the judgment of the circuit court in this case, is erroneous, for the reasons and upon the grounds above indicated, and must be reversed.

Many of the cases upon this subject are referred to in 2 Bishop on Crim. Procedure, § 565, *No.* 4.

It should, perhaps, be remarked here, that, probably, many of the observations which I have made upon the necessity of specifying in the verdict the degree of crime of which the jury find the accused guilty, are not applicable to convictions for manslaughter, for the reason that in addition to the specific punishment affixed by law to each degree of that crime, there is a provision affixing a punishment to the crime generally, without regard to the degree thereof. "Every person who shall commit the crime of manslaughter shall be punished by imprisonment in the state prison, not more than ten years nor less than one year." Taylor's Stats., 1830, § 30. I see no good reason why a general conviction for that crime without specifying in the verdict the degree thereof, may not be sufficient under that provision to sustain a judgment. But it is to be distinctly understood, that we do not decide this point.

What will be the effect of a reversal of this judgment? In a similar case in Pennsylvania, and also in another in Iowa, no new trial was awarded, but the accused was sentenced for the lower degree of murder. *Johnson v. Commonwealth*, 24 Penn. St. R. (12 Harris,) 386; *The State v. McCormick*, 27 Iowa, 402. If we follow that practice here, we should remand the case with direction to the circuit court to sentence the plaintiff

in error for the crime of murder in the third degree. But an insuperable objection to that course is, that we do not know from this record, that he has ever been convicted of that degree of murder. I think that there should be a new trial, to the end that if a conviction follows, the degree of criminality may be ascertained.

2. When the case shall be re-tried, the question may, and probably will arise as to whether the accused can be lawfully convicted on the indictment against him, of murder in the first degree. It is proper to determine that question for the guidance of the circuit court on such re-trial. I do not care to discuss it at length, and will only submit a few observations upon it.

It is a well settled rule of criminal pleading, that the indictment must fully set out the crime charged. An application of this rule to the question would seem to demonstrate, that to support a conviction for murder in the first degree, the indictment must charge, that it was committed with premeditated design to effect the death of the person killed, or of some human being. The argument to sustain this proposition is so strong, that were this question now raised for the first time, and were it not for the adjudications upon it in other courts, and some other circumstances, which will be presently mentioned, I should be strongly inclined to adopt it as sound, and to hold that there can be no conviction of murder in the first degree, under this indictment. First, as to the state of the authorities on this question. In Iowa, Indiana, Ohio and Missouri, it has been held, that an indictment which simply charges the homicide to have been committed with malice aforethought, will not support a conviction of murder in the first degree. *Fouts v. The State,* 4 G. Greene, Iowa, 500; *State v. Mc Cormick,* 27 Id., 402; *Finn v. The State,* 5 Ind., 400; *Fouts v. The State,* 8 Ohio St. R., 98; *State v. Jones,* 20 Mo., 58.

In New York, Massachusetts, Pennsylvania, Tennessee, Nevada, California, Arkansas, and Washington Territory, such an indictment is held sufficient to sustain a conviction of murder

in the first degree. See cases in New York above cited; *Com. v. Desmarteau*, 16 Gray, 1; *Green v. The Com.*, 12 Allen, 155; *White v. The Com.*, 6 Binney, 179; *Johnson v. The Com.*, 24 Penn. St. (12 Harris), 386; *Mitchell v. The State*, 5 Yerg., 340; *Witt v. The State*, 6 Coldw., 5; *State v. Millain*, 3 Nev., 409; *The People v. Bonilla*, 38 Cal., 699; *McAdams v. The State*, 25 Ark., 405; *Leschi v. Territory*, 1 Wash. Ter., 23.

It should be observed that in most of the states where it has been held that an indictment in the common law form will not justify a conviction of murder in the first degree, the procedure in criminal cases is purely statutory, while in many of the states which hold a different doctrine, or at least in some of them, statutes which divide murder into degrees, provide that the forms of indictment in use before those statutes were enacted, shall be sufficient.

In view of these conflicting decisions, and in view also of the special statutory provisions which may have influenced them, it might, perhaps, still be held without doing violence to the authorities, that to sustain a conviction of murder in the first degree, the indictment should expressly charge the premeditated design. But in view of two other considerations, which will now be noticed, I am constrained to hold that such express averment is unnecessary, and that an indictment in the common law form is sufficient for that purpose.

*First.* I believe that it has always been understood by the bench and bar of this state, that on an indictment for murder which only charged that the killing was with malice aforethought, without expressly charging a premeditated design, the accused might lawfully be convicted of murder in the first degree. At least, so far as my personal knowledge of the procedure in criminal cases in this state extends, this view of the law has been very generally entertained and acted upon. I doubt not that many persons have been convicted of murder in the first degree in the courts of our state, since 1849, and punished therefor upon just such indictments as the one in this case. We

have already seen that there is much authority which sustains those views as sound and such convictions as lawful. It would require strong reasons,— much stronger than have presented themselves to my mind in this case — to hold a contrary doctrine under such circumstances. The acquiescence of a bar so able and learned as the bar of Wisconsin, and for so long a period, in the correctness of a given proposition or rule of law, and this without a word of dissent from the bench, brings such rule almost within the operation of the maxim, "*stare decisis*." At any rate, a rule thus indorsed and thus acted upon should not be lightly overthrown.

*Second.* In 1871, the legislature enacted a code of procedure in criminal cases, which has for one of its objects the simplifying of criminal pleadings. In pursuance of that most desirable object, it enacted that in indictments or informations for murder, it is sufficient to charge " that the accused did wilfully, feloniously and of his malice aforethought, kill and murder the deceased." Laws of 1871, chap. 137, sec. 12. There can be no question but that the legislature intended by this law to authorize a conviction of murder in the first degree, on an indictment or information in the prescribed form. Now, if it be held that an indictment or information in that form does not charge the crime of murder in the first degree, the law is clearly unconstitutional in respect to that degree of murder, for the reason that the indictment or information fails to apprise the accused of the nature and cause of the accusation against him. Const., art. I, sec. 7. Hence it seems to me that if we should hold that the indictment in this case does not contain a charge of murder in the first degree, we must necessarily hold that the law of 1871 is invalid in the particular just mentioned, and that no person can lawfully be convicted of that degree of murder on any indictment or information drawn in the form thereby authorized. This should not be done unless the statute clearly violates the constitutional provision. That it does so, is not sufficiently clear to my mind to justify me in holding it invalid.

On the contrary, I must hold that it is valid and effectual to authorize a conviction of murder in the first degree on an indictment or information drawn pursuant to the form which it sanctions; and to do this, I must necessarily hold that the indictment in this case contains a charge of murder in the first degree, as well as in the second and third degrees, and that under it a lawful conviction may be had of either of those degrees of murder.

Upon the whole case I am of the opinion that the judgment of the circuit court should be reversed and a new trial awarded, and that the plaintiff in error being now unlawfully confined in state prison, should be surrendered by the commissioner thereof, to the sheriff of Manitowoc county, to be by him held in custody until discharged by due course of law.

DIXON, C. J. In *The State v. Duvall*, 26 Wis., 415, Mr. Justice Paine queries whether an indictment in the common law form, charging the homicide to have been committed "with malice aforethought," is sufficient to charge the offense of murder in the first degree, as defined by the statute. In other words, he queries whether the introduction of the words of the statute defining such offense, " with the premeditated design to effect the death of the person killed," (or of some other human being if such shall be the fact), are not indispensable to the validity of the indictment for that degree of murder. On principle, and by the well understood rules of criminal pleadings, there can be no doubt, I think, of the necessity of such averment, and my respect for error, sanctified though it may seem to be by numerous judicial decisions, or long course of practice, is not so great as to induce me to acquiesce in, or overlook it upon so vital and important a question as this, where the defect may be so easily obviated or avoided by the exercise of a little care and attention on the part of the pleader. I cannot do so, but must hold that without the words essential to the description and definition of the offense by the statute, the indictment

does not charge it. I agree that the indictment here is sufficient to charge the second or other lower degree of murder as defined and created by the statute, but not murder in the first degree, for which latter offence, I hold there can be no conviction under it. This whole subject is most ably and elaborately examined and discussed by Mr. Bishop, 2 Criminal Procedure, §§ 562 to 588, and I have the good fortune of having the opinion of that learned writer most decidedly in favor of the view, which I feel compelled to take of it. In all other particulars, I concur in the views expressed by Mr. Justice Lyon.

COLE, J. I concur in the above opinion of Mr. Justice Lyon.

*By the Court.* — Judgment reversed and a new trial awarded.