Roman vs. The State.

## ROMAN vs. THE STATE.

CRIMINAL LAW: MURDER: NEW TRIAL. *(1) What constitutes murder in the first degree. (2) Setting aside verdict for misconduct of jurors.*

1. In a prosecution for murder in the first degree, the court charged that, "no matter what the provocation; no matter what the heat of passion, no matter if there were any previous assaults; no matter what the other surrounding circumstances may have been: unless the act was justifiable, if there was a premeditated design to produce death, it is murder in the first degree." *Held*, no error, it being clear from the whole charge that by the provocation and heat of passion here spoken of, were meant such as were not incompatible with the formation in the mind of the accused of a deliberate, premeditated design to kill the deceased.

2. A verdict should not be set aside for misconduct of jurors, as in drinking a small quantity of spirituous liquor, where there is no reason to suspect that it influenced the verdict. So held in a case where neither of the parties was connected with the alleged misconduct.

ERROR to the Circuit Court for *Winnebago* County. The case is stated in the opinion. The cause was argued by *C. W. Felker* for the plaintiff in error, and by the *Attorney General* for the state.

For the plaintiff in error, the argument was substantially as follows: 1. Manslaughter is the unlawful killing of a human being without malice. 1 Archb. Crim. Law, 806. Murder is such killing with premeditation, malice, design. Upon proof of the killing, without anything else appearing, malice may be inferred. But if there is a previous assault, strong provocation, or other circumstances calculated to arouse passion, it is manslaughter, unless *express malice* is shown by extrinsic evidence. In murder, the design to kill must exist beforehand, and not be caused by the act of provocation. *Bivens v. The State*, 6 Eng., 455; 1 Archb., 845. Tested by these principles, the charge was erroneous. 2. The verdict should be set aside for misconduct of the jurors. Their affidavits show that some of them not only drank intoxicating liquor, but lied about it. See *State v. Baldy*, 17 Iowa, 39; *Brant v. Fowler*, 7 Cow.,

562; *People v. Douglas*, 4 id., 26; *Gregg v. McDaniel*, 4 Harr. (Del.), 367; *State v. Bullard*, 16 N. H., 139; *Leighton v. Sargent*, 31 id., 119; *Jones v. The State*, 13 Tex., 168. The defendant has the right to have the best judgment of the jurors, uninfluenced by extrinsic circumstances. Where liquor is introduced into the jury room at all, it is difficult to ascertain the truth as to the extent and effects of its use. Jurors in such cases will always endeavor to shield themselves. If courts tolerate the practice, and put upon the defendant the burden of showing injury, it becomes a question how intoxicated a juror can get without impairing his judgment.

For the state it was argued, 1. That there was nothing in the case making the statute in regard to *excusable* homicide applicable (Tay. Stats., 1827, § 6), and the jury were properly instructed that the killing here, if premeditated, was either justifiable homicide or murder in the first degree. Tay. Stats., 1826, § 2, subd. 1; 1 Russ. on Cr., 525 et seq.; *Hogan v. The State*, 36 Wis., 244. 2. That the verdict should not be set aside for the conduct of the jurors appearing in this case. 2 Gra. & Wat. N. T., 564, and cases there cited; 21 Vin. Ab., 448; 2 Hale's P. C., 306; *Wilson v. Abrahams*, 1 Hill, 207; *U. S. v. Gibert*, 2 Sum., 21; *Thompson's Case*, 8 Grat., 637; *Stone v. The State*, 4 Humph., 27; 11 id., 496; *State v. Morphy*, 33 Iowa, 270; *Davis v. The People*, 19 Ill., 74.

LYON, J. The plaintiff in error was informed against, tried and convicted for murder in the first degree, in the circuit court for Winnebago county. The court denied a motion for a new trial, and gave judgment in accordance with the verdict. The accused has brought the case to this court by writ of error, for review. A reversal of the judgment is claimed on two grounds: 1. For alleged error in the instructions given the jury; and 2. For misconduct of jurors.

I. The only portion of the instructions to which exceptions were taken, is as follows: "The first inquiry, then, for you is,

Was there in the mind of defendant, at the time Magill was killed, a premeditated design to produce death? No matter what the provocation; no matter what the heat of passion; no matter if there were any previous assaults; no matter what the other surrounding circumstances may be: unless the act was justifiable, if there was a premeditated design to produce death, it is murder in the first degree."

The charge of the learned circuit judge contains an elaborate and a very clear and able statement of the law of homicide. He explained to the jury fully and accurately the circumstances and incidents which would render a homicide felonious, justifiable or excusable, and carefully defined the different degrees of murder and manslaughter. Immediately before he gave the portion of the charge excepted to, he said: " The killing of a human being is either murder, manslaughter or justifiable or excusable homicide. When done with a premeditated design to produce death, it is murder in the first degree, unless it is excusable under the law that I will call your attention to hereafter."

The objection to the instruction first above quoted is, that it confounds the distinction between murder and manslaughter, and exposed the defendant to a conviction for the greater crime, when in fact he may have been guilty of the lesser crime only.

Under our statute, murder in the first degree consists in the unlawful killing of a human being with a premeditated design to effect death — that is to say, with express malice aforethought. R. S., ch. 164, sec. 2; *Hogan v. The State*, 30 Wis., 428; *S. C.*, 36 id., 226. If the killing be unlawful, and there is the premeditated design to kill present in the mind of the slayer, it is murder in the first degree; and so the judge told the jury. But for the use of the words, " No matter what the provocation, no matter what the heat of passion," the instruction would not be open to criticism.

That the provocation and heat of passion may be so great as

to reduce the unlawful killing from murder to manslaughter, no one doubts; but this results only when the passion or provocation is such as to render the slayer incapable of forming a deliberate, premeditated design to kill. If he is capable of forming such premeditated design, and does form and execute it unlawfully, it is murder in the first degree, although he may have received provocation and acted under some passion. And this, we think, is what the Arkansas court mean in the case relied upon by the learned counsel for the plaintiff in error, when they say, "It is only necessary that the premeditated intention to kill should have actually existed as a cause determinately fixed on before the act of killing was done, and was not brought about by provocation received at the time of the act, or so recently before *as not to afford time for reflection.*" *Bivens v. The State,* 11 Ark. (6 Eng.), 461. This is also the purport of the charge in the present case.

The jury were further instructed that by the common law, murder was the unlawful killing of a human being with malice aforethought, express or implied, and manslaughter was the unlawful killing of a human being without malice aforethought, either express or implied. Also that under our statute, with the two exceptions of felonious homicides with implied malice aforethought, which constitute murder in the second and third degrees (*Hogan v. The State, supra*), felonious homicide with implied or constructive malice aforethought is not murder, but is manslaughter in some one of the degrees of that crime.

Taking the whole charge together, it is clear that the expression, "no matter what the provocation, no matter what the heat of passion," was qualified by the judge (if any such qualification was necessary), to mean a state of mind on the part of the plaintiff in error not incompatible with the formation of a deliberate, premeditated design to kill the deceased; and so we think the jury must have understood it.

Roman vs. The State.

We conclude that the charge in the particular complained of is not erroneous.

II. The alleged misconduct of the jurors is as follows: During the trial of the case, one of the jurors, claiming to be unwell, procured a small bottle of liquid, composed partly or wholly of brandy, the quantity being a gill or a little more, and partook of it. Three or four other jurors tasted the contents of the bottle. The jury were kept together during the trial, which occupied two days after the jury were sworn, and this transaction occurred on the evening of the first day, after the adjournment of the court for the day, and on the next morning before the court convened. The bottle was not furnished by any one having anything to do with the case; the officer in charge of the jury, and several of the jurors, did not know that the bottle had been brought into the room where they were, or that any juror drank spirituous liquor during the trial; and no juror was under the influence of liquor, or in the slightest degree intoxicated, during the trial. These facts are fully established by the affidavits of all the jurors and the officer in charge of them, read on the hearing of the motion for a new trial.

Some of the old cases hold that the drinking of spirituous liquors by jurors, even in small quantities, is ground for a new trial, without inquiry as to whether there has been any abuse in the particular instance. But this rule has been overturned by later cases, which hold that such misconduct of the jurors ought not of itself to overturn the verdict, unless there is reason to suspect that it may have influenced the final result. 2 Graham and Waterman on New Trials, 561, 564, and cases cited.

While the use of spirituous liquors by jurors when on duty, except in cases of absolute necessity, cannot be too severely censured, yet we think the rule of the later cases is the more reasonable rule, and is now supported by the greater weight of authority. Such rule is in harmony with that laid down in

*Keenan v. The State*, 8 Wis., 132 (followed in *Rowan v. The State*, 30 id., 129, and *State v. Dolling*, 37 id., 396), where there had been an improper separation of the jurors. It was held that in capital cases, unless it is made to appear that the separation was not followed by improper conduct of the jurors, nor by circumstances calculated to exert an improper influence on the verdict, a verdict of guilty should be set aside for such misconduct. In *State v. Dolling*, the difficulty of making the proof required to save the verdict is considered by the chief justice. The result of those cases is, that if there remains reasonable ground to suspect that the misconduct may have influenced the verdict, the required proof is wanting, and the verdict should be set aside; which is the rule of the later cases before mentioned.

Here there is no such difficulty in the way of making the required proof. The quantity of liquor which the jurors drank, and the time when they drank it, are given. The learned circuit judge, in denying the motion for a new trial, must have held that the drinking of a gill of brandy, part of it at bed time, and the remainder the next morning, by four or five jurors, furnished no reasonable ground to suspect that their verdict was influenced by the liquor, or that their judgment was in any degree affected thereby. Such a suspicion would seem absurd in view of the facts. We have no doubt the judge ruled correctly. We must therefore affirm the judgment of the circuit court.

*By the Court.* — Judgment affirmed.