TERRITORY OF HAWAII *v.* GEORGE ELI FERRIS.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JUNE 15, 1903.     .   DECIDED AUGUST 4, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A party who neglects to claim his right of challenge to the grand jury, before they retire, waives it, although he may be imprisoned at the time.

The right, if any, of an accused to have the assistance of counsel at the impanelment of the grand jury, is waived if he neglects to claim it, even though imprisoned at the time.

Where one who is detained in custody awaiting action by the grand jury
does not notify the court that he is financially unable to employ
counsel for his defense and does not request the assignment of
counsel, it is not error for the court to fail to make such assignment
prior to the arraignment.

At the arraignment a deputy of the Attorney General may read the in-
dictment.

Upon a motion to discharge a defendant, made after plea of not guilty,
on the ground that he has not been duly arraigned, one who, with
the acquiescence of all concerned, acted at the term of court at
which the indictment was presented as a deputy of the Attorney
General must be presumed, in the absence on any showing to the
contrary, to have been duly authorized to act in that capacity.

The use of intoxicating liquors by members of the jury pending the
trial, and before the final submission of the case, such liquor having
been furnished by one of their own number, will not, in the ab-
sence of a showing that prejudice to the defendant resulted there-
from, vitiate the verdict.

A court of record may, even at a subsequent term, cause amendments
to be made to the minutes of its proceedings, kept by the clerk, to
the end that the same may conform to the actual facts and truth
of the case.

Verdict held not contrary to the evidence.


OPINION OF THE COURT BY PERRY, J.


The defendant was convicted of the offense of murder in the first degree and sentenced to death. The case comes to this court on thirty-one exceptions.

Exception 1. Upon the calling of the first witness for the prosecution the defendant objected to the taking of any testimony and moved for a direction to acquit on the grounds (a) that he had been deprived of the right, claimed to be secured to him by the Fourteenth Amendment to the Constitution, to be present at impanelment of the grand jury which returned the indictment against him and also of the right, claimed to be secured to him by the sixth amendment, of having the aid and advice of counsel in such impanelment, (b) that he had not been arraigned upon the charge presented in the indictment,

and had made no plea thereto, and that there was an untrue endorsement upon the indictment to the effect that he had pleaded guilty thereto, and (c) that he had been deprived of a trial of his cause before the regular jury for the August, 1902, term of the court and had been compelled to proceed to trial before another jury.

Rule 6 of the rules relating to grand juries, prescribed by this court in accordance with Section 83 of the Organic Act, provides that "before the grand jury retires, the prosecuting officer or any person held to answer a charge for a criminal offense, may challenge the panel or an individual juror, for cause to be assigned to the court." The indictment against the defendant was found by the grand jury impaneled for the August term, 1902, of the Circuit Court of the First Circuit. At the time of the impanelment of that jury, the defendant was in jail, held to answer for the offense for which he was subsequently indicted. He made no request for leave to be present at the impanelment. No cause of challenge is shown or claimed to have existed.

The right to challenge a grand jury panel or an individual juror did not exist at common law but is statutory only. In this Territory it is given by rule of court, and in order to avail must be exercised before the jury retires. The privilege so granted by the rule may be exercised or not by the accused at his option and if he knows of no sufficient cause of challenge or for any other reason sees fit to waive the privilege, he may do so. If the accused expresses no desire to challenge, the court may properly regard the silence as a waiver. The fact that the defendant was in jail at the time of the impanelment does not, in our opinion, alter the case. The May term was one of the regular terms prescribed by law. The defendant knew that his case was awaiting action by the grand jury and must be presumed to have been aware of the law concerning the terms of court. It was for him to have indicated his desire, if any, to be present at the impanelment. Having failed to do so, he cannot suc-

cessfully claim that he was denied the privilege. The great weight of authority supports this view. "Nor does it appear, nor is it contended, that the prisoner asked, or demanded, or was denied, the right to a challenge. He did not attempt to assert, nor was he prevented from asserting, the right of challenge; nor is it claimed, as we have before observed, that any cause of challenge, either as to the panel or any individual juror, actually existed. His counsel take the broad ground that, as he was imprisoned at the time the grand jury was impaneled and sworn, he had no opportunity to challenge the panel, and that the indictment should have been set aside. Had it appeared that he had been denied this right, or been prevented from exercising it, and that any sufficient cause of challenge existed, a far different question would have been presented; but to allow a prisoner to sleep upon his rights until after indictment found, as in this case, and then to hold this very negligence as fatal, puts it into the power of almost every person under arrest to avoid the indictment by failing to object to the grand jury, or else forces the court or prosecutor to drag him, however reluctant, to the court room, whenever the grand jury is to be impaneled and sworn." *Maher v. State,* 3 Minn. 329, 330. "To have this effect" (of rendering the indictment worthless) "the prisoner must have applied for leave or requested permission to appear and challenge the jury. It was not the duty of the court of sessions to bring him into court for the purpose of exercising this privilege. It is the prisoner's business to know when the court meets, and if he desires to challenge the jury, to apply, if in custody, to the court, to be brought into court for the purpose; and if he fails to do this, he waives his privilege of excepting to the panel of any member." *People v. Romero,* 18 Cal. 90, 94, 95. See also *State v. Hinckley,* 4 Minn. 261, 272; *Webb v. State,* 40 S. W. (Tex., 1897) 989, 990; *Ross v. State,* 1 Blkfd. 390. The fact that no cause of challenge is shown to have existed and that therefore no preju-

dice resulted to the defendant, would perhaps of itself be suffi-
cient ground for overruling the exception on this point.

The sixth amendment provides that "in all criminal prose-
cutions, the accused shall enjoy the right * * * to have the
assistance of counsel for his defense." Assuming that this
applies not only to the actual trial but as well to preliminary
proceedings including the impaneling of the grand jury, still
the defendant was not denied the right in question. The con-
stitutional provision left him at liberty either to appear in
person or to employ counsel, as he might see fit to do. Of itself
it placed no obligation on the Territory to provide him with
counsel. He did not signify a desire to be represented by
counsel and was not refused permission to do so. Nor was
there any violation by the court of Section 657 of the Penal
Laws, which provides that "in all cases of felony in which the
party accused is unable to employ counsel for his defense, the
court may assign him counsel from among the licensed prac-
titioners, who shall use every lawful exertion in his behalf
without fee or reward, upon pain of contempt to the court." It
may be assumed that this section too applies to preliminary
proceedings. But where the accused is in prison and permits
the impaneling of the jury to pass by without making known
to the court he is unable to employ counsel and without request-
ing the assignment of counsel, how is the court to know that he
is indigent? There is no presumption of indigency; and a
man, even though indigent, may desire and if he does so desire
should be permitted to present his defense without the assistance
of counsel. The trial judge may not even know and in some
instances doubtless does not know until the grand jury reports
or until arraignment who the accused is or that such an indict-
ment is to be presented. There is no denial of the right, if it is
an absolute right, until at least the court is informed that the
necessity for the assignment exists. In this case, as soon as
the court was so informed, to wit, at the arraignment, an as-
signment was made. On this point also it may be added that it

is not shown or claimed that there was any cause of challenge either to the panel as a whole or to any individual juror or that counsel could have rendered any assistance to the defendant at that stage of the proceedings.

As to arraignment. From the clerk's minutes it appears that on May 22, 1902, the defendant was called to the bar for arraignment, that the indictment was read to him by E. A. Douthitt, Assistant Attorney-General, and that to the indictment the defendant pleaded not guilty; that thereupon, the defendant being without counsel, the court assigned counsel for his defense; that counsel so appointed at once moved for leave to withdraw the plea and that such leave was granted and the plea withdrawn; that after two continuances the defendant, on May 27, 1902, again entered a plea of not guilty to the indictment as so read; and that, on motion of the defendant's attorneys, the cause was then continued until the August term. On the back of the indictment is this endorsement: "Plea: May 22. Plea of not guilty. Upon motion of C. F. Reynolds, Esq., it is ordered plea of guilty be withdrawn, and continued until Friday, May 23, at 10 a. m." (Signed) M. T. Simonton, Clerk. "May 27. Deft. pleads not guilty. Case continued until Aug., 1902, Term to be set." (Signed) M. T. Simonton, Clerk

It is contended that this endorsement might have misled some juror into the belief that the defendant had made a formal admission of guilt. We do not regard this as possible. The note is a brief one, occupying but a very few lines in consecutive order. If any juror read the words, "it is ordered plea of guilty be withdrawn," he must have read the whole note; and, so read, it is entirely clear that the absence of the word *not* was a mere clerical error and that at no time was a plea of guilty entered. The main point, however, in this connection seems to be that Mr. Douthitt was not authorized by law to read the indictment. The sole object of arraignment is to inform the accused of what the charge against him is. That object was fully

accomplished in this case. By pleading to the indictment the defendant would seem to have waived the objection now made; but let it be assumed that it was not so waived. The contention is that the office of Assistant Attorney General has no statutory existence and that the only officers who can legally present an indictment are the Attorney General and such deputies as he may appoint. The applicable provisions of the statutes are as follows: "In all cases of offenses against the laws of this Territory, triable only by a Court of Record, the accused shall be arraigned and prosecuted by an indictment by a legal prosecutor of the Territory." Section 615, P. L. "The Attorney General shall appear for the Government personally or by deputy, in all the courts of record of this Territory, in all cases criminal or civil in which the Government may be party, or be interested." Section 1013, C. L. Mr. Douthitt acted at that term of court, with acquiescence of all concerned, as a deputy of the Attorney General. The presumption is that he was duly authorized by the Attorney General to so act. We do not decide that an indictment may not be read by one other than the Attorney General or one of his deputies; no opinion is expressed on that point.

The objection with reference to the trial jury has been abandoned. We find in the record no cause for sustaining it.

Exceptions 2 to 27 inclusive and 29 are to rulings made during the trial upon objections to testimony. We have carefully examined the record with reference to them all, including nine which have been expressly abandoned, but can find nothing to require or to justify a reversal of the verdict. In most of them the rulings were clearly correct. Perhaps in one or two instances a different ruling might properly have been made, but the error, if any, was not prejudicial. The matters were not such as to possibly affect the result of the trial. No evidence offered by the prosecution was admitted which was not admissible and very wide latitude was allowed the defendant in cross-examination of the witnesses produced against him.

Exception 28. At the close of the case for the prosecution, the defendant moved to dismiss the indictment and for a directed verdict on the grounds named in exception 1, already disposed of, and on the further ground that there was no evidence to connect the defendant with the commission of the crime or to show that the deceased was John Watson or that the deceased met his death from a wound inflicted by a knife or any other instrument in the hands of the defendant or from any other wound received at the hands of the defendant. Were this case of a less serious nature, we would be inclined to characterize this motion and exception, in so far as it relates to the alleged lack of evidence, as frivolous; but mindful of the gravity of the charge and of the sentence we have carefully read the transcript of the evidence. We have no hesitation in saying that a complete *prima facie* case was established by the prosecution and that the motion was properly denied. The evidence adduced by the prosecution was such as, standing by itself, to have amply justified the jury in finding the following facts: that at about eight o'clock on the evening of April 16, 1902, the defendant was standing on the front verandah of the lodging house of one Meyers situate on Queen Street in this city, talking to Meyers and perhaps others about horses; that John Watson, the deceased, then approached from without and asked who was talking about horses or who it was that said he could ride horses or some similar question and that thereupon an argument ensued between him and the defendant on the subject, Watson standing at the head of the steps on the left side going up, leaning against the railing and with both hands behind his back, and Ferris standing one step lower on the opposite side of the steps and about four or five feet from Watson; that during the conversation, which lasted only a few minutes, Ferris said that Watson had called him a son of a —— some days before, that Watson denied this, that Ferris repeated his assertion and asked Watson, "Did you mean it?" That Watson at first remained silent but, Ferris insistently repeating the question, finally said, "Well,

if I did call you a son of a —— I did mean it"; that without warning Ferris immediately dealt Watson, who was still standing in the position already described, a heavy blow on the left side in the region of the chest; that Watson staggered, walked back a few steps towards the body of the house and then forward again and fell, one Daniel Smith catching him as he fell, blood issuing from a wound in Watson's left side and from his mouth; that a few moments later Watson was dead; that immediately after the assault Ferris left the spot and a few moments later the premises and ran away and was not found, although diligent search was made for him by the police, until the next day; that the wound was caused by a knife wielded by Ferris and that Watson's death was caused by the wound so inflicted and was not due to any other cause; and that about eight days prior to the date of the assault Ferris, pointing to Watson who was some distance away, had said to one Blackwell, a witness for the prosecution, "See that son of a ——; I will fix him yet". Upon the evidence then before it the jury would have been justified in finding that the killing was committed not in the heat of passion but in cold blood and with premeditated malice aforethought.

Exception 30 is to the verdict on the ground that it is contrary to the law and the evidence and the weight of the evidence. This is sufficiently disposed of by what is said concerning exception 28. It may be added, however, that the defendant took the stand in his own behalf and admitted that, at the time and place already stated, he stabbed John Watson, the deceased, with a knife similar to that introduced in evidence by the prosecution. His claim was that he did so in self-defense, that during the conversation at the Meyers house Watson had suddenly come towards him and grabbed him by the shirt bosom with his left hand, tearing the shirt, at the same time having his right hand in his hip pocket, and that as Watson took hold of him he, Ferris, thought his life was in danger, drew the knife and dealt Watson the blow. But the overwhelming weight of the evidence

was against the defendant's version of the occurrence. The evidence was clearly sufficient to support the verdict.

Exception 31, to the denial of the defendant's motion for a new trial. The motion was filed September 12, 1902, and was based upon errors alleged to have occurred at the trial and already passed upon in this opinion and upon the further grounds that members of the jury separated during the trial without leave of court and partook of intoxicating liquors during the trial to such an extent as to render it probable that the verdict was affected thereby.

The jury was sworn and the actual trial commenced on the morning of September 4, 1902. At 5:30 p. m. the court adjourned for the day and the trial was resumed on the following morning at eight o'clock. At 10:15 p. m. the jury retired for deliberation and at 12:30 o'clock the next morning rendered their verdict. The night from the 4th to the 5th the jury spent in the upper floor of this Judiciary Biulding, occupying as a bed-room what is now Circuit Judge De Bolt's court room and two or three adjoining rooms, including Circuit Judge Gear's chambers, for lounging and other purposes. The alleged separation consisted simply in this: that at about 10:30 p. m. one or two of the jurors were in the hall-way near their bed-room and two or three other jurors in Judge Gear's chambers. All, however, were at all times in charge of an officer and in his view. The point as to separation can not be sustained, in fact it has been abandoned.

During the evening just mentioned some of the members of the jury drank beer, not exceeding two glasses each, furnished by one of their number. No evidence was adduced tending to show that any of the jurors became intoxicated or was under the influence of the liquor so used and each of the jurors deposed on oath that none of them was thus affected. The trial judge in overruling the motion evidently found, and we think the finding was correct, that the use of the liquor did not affect the consideration of the case or influence the verdict. While the

use of intoxicating liquor by a jury during the trial of a capital case, except in instances of absolute necessity, is deserving of severe censure and condemnation, such use is not of itself, where the liquor is not furnished by one of the parties to the cause, necessarily a ground for the granting of a new trial. The material inquiry in such cases is whether the defendant was prejudiced thereby, in other words, whether the use was such as to affect the mind of any of the jurors and thus deprive the defendant of the benefit of the condition of mind of each and all of the jurors to which he is entitled; and if it appears that the defendant was not prejudiced, the verdict can not be reversed. This is the modern view, shared in by the great majority of courts. See *People v. Leary,* 105 Cal. 486; *Jones v. People,* 6 Col. 452; *State v. Bruce,* 48 Ia. 530; *Pratt v. St.,* 56 Ind. 179; *State v. Cucuel,* 31 N. J. L. 249; *State v. Washburn,* 91 Mo. 571; *Burgess v. Territory,* 1 L. R. A. (Mont.) 808; *State v. Madigan,* 57 Minn. 425; *Rider v. State,* 9 S. W. (Tex.) 688; *Roman v. State,* 41 Wis. 312.

The motion for a new trial, as originally presented, was passed upon September 13, 1902. On April 20, 1903, the defendant filed a motion for "re-hearing of the motion for a new trial", specifying as new grounds for the reversal of the verdict that the record did not show that the defendant was present at the impanelment or swearing of the trial jury, or at the trial, or at the rendition of the verdict, or at the passing of sentence, or that, prior to the passing of sentence the defendant was asked whether or not he had anything to say as to why sentence should not be passed. The clerk's minutes were at that time in fact defective in the particulars named, but the trial judge, in a written decision rendered upon the motion in question, and dated April 23, and filed April 25, after reciting that (although the clerk's minutes did not show it,) the fact was that the defendant was present at all of the times named and was asked prior to the passing of sentence whether he had anything to say as to why sentence should not be passed, ordered that the clerk's minutes

be amended so as to conform to the truth and to the facts in the decision set forth and that the order be entered *nunc pro tunc* as of the August Term, 1902. The minutes were amended as directed except as to the defendant's presence at one of the continuancs granted and as to the asking of the formal question at the time of sentence; as to these two matters, the minutes still remain silent.

It is contended that the court had no authority to order the amendments. We think otherwise. The court was satisfied as to the actual facts and these were not disputed by the defendant. There was no contention that he had not been in fact present at any stage of the trial or that he had not been asked the question. Not only was it competent for the trial court to make its record conform to the facts but it was its duty to do so. See *Kaufman v. Shain,* 111 Cal. 16; *Lewis v. Ross,* 37 Me. 230; *Gibson v. Chouteau's Heirs,* 45 Mo. 171; *Frink v. Frink,* 43 N. H. 508; *Bank v. Emerson,* 10 Paige 359; *State v. Pierre,* 3 So. (La.) 60; *Burnett v. State,* 14 Tex. 455; *Pay v. Wenzell,* 8 Cush. 317; *In re Wight,* 134 U. S. 136. As to the two matters with reference to which no corrections were made by the clerk, it is sufficient to say, without passing upon the question of the necessity of the defendant's presence at a motion for a continuance or of putting the formal question referred to, that the decision and order of the judge sufficiently show that the defendant was in fact present and that the question was asked.

The point is also made that the trial judge exceeded his jurisdiction in ordering the amendments because the bill of exceptions had been already filed. The bill bears one endorsement showing it to have been filed on January 31, 1903, and another showing it to have been filed April 21, 1903. It is dated January 30, 1903. The date of its allowance does not appear. If it was allowed before the so-called motion for a re-hearing was heard or decided, the bill does not present the question of the correctness of the ruling and order made upon that motion. If, on the other hand, that hearing and decision preceded the allow-

ance of the bill then, if the cause was before the Circuit Court for the purpose of the presentation of the motion, it was equally before the court for the purpose of rendering a decision on the points raised.

Every one of the twenty-two instructions requested by the defendant was given, with an amendment to one only, and that a correct amendment. No exception was noted to any part of the charge.

The exceptions are overruled.

*Attorney-General Andrews; W. S. Fleming,* for the prosecution.

*E. C. Peters* and *E. A. Douthitt* for the defendant.