DEERKOP, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 6—October 9, 1928.*

For the plaintiff in error there was a brief by *John A. Cadigan* of Superior, attorney, and *John J. Fisher* of Bayfield and *Cadigan & Cadigan* of Superior, of counsel, and oral argument by *John A. Cadigan.*

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *Charles E. Morris,* district attorney of Bayfield county, and oral argument by *Mr. Messerschmidt* and *Mr. Morris.*

The following opinion was filed May 8, 1928:

OWEN, J. It is urged by counsel for defendant that the judgment should be reversed because the verdict found the defendant guilty of no particular degree of murder, and especially that it did not find that the killing was perpetrated from a premeditated design to effect the death of the person killed. The contention of counsel finds support in *Hogan v. State,* 30 Wis. 428; *Allen v. State,* 85 Wis. 22, 54 N. W. 999; and *La Tour v. State,* 93 Wis. 603, 67 N. W. 1138, and if the doctrine of those cases is to be followed the judgment cannot be sustained. Since the decisions in those cases, however, the legislature has provided by sec. 274.37, Stats., that "No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial." Since the enactment of this statute it frequently has been held that prejudicial error must appear in order to work a reversal of a judgment in a criminal as well as in a civil case. *Haffner v. State,* 176 Wis. 471, 187 N. W. 173, and cases there cited.

Sec. 355.24, Stats., provides that "it shall be sufficient in any indictment or information for murder to charge that the accused did wilfully, feloniously and with malice aforethought kill and murder the deceased." The information in this case adopts the exact language of this statutory provision and must be held sufficient. Under the evidence the defendant was guilty of murder in the first degree, or nothing. There was no evidence upon which to base a verdict of a lesser degree of homicide. The court submitted this verdict to the jury and instructed them that they must either find the defendant guilty or not guilty. While this was not a proper form of verdict, prejudice to the defendant is not apparent from its irregularity in form. They must have found that he perpetrated the killing. This the defendant absolutely denied. He made no attempt at palliation or justification. If he perpetrated the killing he was plainly guilty of murder in the first degree. The improper form of the verdict does not constitute prejudicial error.

A more serious question arises upon the contention that the verdict is not supported by the evidence. The presumption of innocence attended the defendant from the beginning to the end of the trial. The State had the burden of removing this presumption and proving the guilt of the defendant beyond a reasonable doubt. We agree, at the outset, that the case which the State made against the defendant was not strong, and we are to inquire whether it was sufficient to justify a finding of guilt. The defendant was an unmarried man of about forty years of age. He was born in the town of Gilmanton, Buffalo county. He was a common laborer and worked for the most part on the farm and in the woods, although in later years he worked to some extent in plants manufacturing rubber goods. He enlisted in the United States army and saw service in France with the 32d Division. During his service in the army he was promoted from private to corporal, and received an honorable discharge. He was never arrested for crime. There is an

absolute lack of any evidence showing a motive for the crime of which he was convicted. There is no evidence that he knew the deceased, and no one testified that he was ever seen in his company. There is no evidence that he bore firearms or that he ever carried them. No bullets or firearms were found upon him when he was arrested. When arrested he had in his possession a very small sum of money. The cartridges found in the pockets of the deceased were 38-caliber revolver cartridges. Although the deceased was riddled with four bullets, three in his head and one in his heart, only one was recovered. This was a 32-caliber bullet. This negatives the idea that the bullets found in his pockets were planted there by the one who committed the murder. These are the weaknesses which must be recognized in the State's evidence.

On the other hand, there is no doubt of the presence of the defendant in the vicinity at or about the time of the murder. There is no doubt that the defendant walked across the Drummond field. He admits this himself. The jury was warranted in believing that on the evening before the murder two men walked across the field and in a direction leading towards the scene of the murder; that one set of footprints were those of defendant. The shoes of defendant exactly fitted into these footprints. The evidence of the defendant does not negative the fact that he took this road or traveled in this direction when he admits he crossed the field. Companion footprints show that when he crossed the field he was accompanied by some one. The shoes of the deceased exactly fitted into the footprints made by the companion. It is not only a permissible but a rather probable inference that the two men whom the witness Plis saw walking across the field about 6 o'clock in the evening before the murder were the defendant and the deceased. About 7:30 o'clock on the evening of the murder Dr. Clark examined the body and concluded that the deceased had been

dead for a period of from two to three hours. At about 4:35 o'clock of that day the witness Goff saw the defendant on the highway under circumstances justifying the inference that he was coming from the direction of the scene of the murder. It would seem that the jury was entitled to find that the defendant and the deceased repaired to the vicinity of Lake Williams on Monday evening of the 22d and that defendant came out late in the afternoon of June 23d, shortly after the murder of the deceased. In addition to this, we find that the deceased at the time wore a pair of socks not only identical with other socks found in the defendant's suitcase, but bearing a tag having the same laundry mark that was found on other socks in the defendant's suitcase. We have the further testimony that on Sunday night he occupied the same room in the Silver Hotel in Ashland with some other man. While the identity of that other man is unknown, it is a permissible if not a reasonable inference that that other man was the deceased, in view of the evidence hereinbefore detailed.

We now come to the question of the reasonableness of defendant's explanation as to his whereabouts on Monday. It will be borne in mind that according to his testimony he deposited his suitcase in a locker in the depot at Ashland Monday morning. He wandered about Ashland all day until 9 o'clock in the evening, when he was kidnapped, as detailed in the statement of facts. It must be conceded that the kidnapping story is highly improbable and not readily to be believed. Furthermore, we are led to inquire why he deposited his suitcase in the locker in the depot in the morning. According to his subsequent actions, he must have intended to remain in Ashland that night. At least he was there until 9 o'clock in the evening, when he claims to have been kidnapped. If he intended to remain at Ashland during that evening, why did he not leave his suitcase in the room of the hotel? The circumstances called for a

rather clear explanation by the defendant of his whereabouts on Monday. The explanation offered by him was fantastic to say the least, and his story is not made more probable by the fact that he made no attempt to report the incident to the authorities upon his return to Ashland Tuesday morning after he was kidnapped.

Upon this testimony the jury found the defendant guilty and the trial judge permitted the verdict to stand. Conceding as we must the weakness of the case in many particulars, we cannot say that the verdict is without justification or evidence to support it. We hold upon this evidence that the jury had a right to find the defendant guilty. They saw him in the court room and heard him testify upon the stand and had a far better opportunity of judging his testimony than have we. If the story of his whereabouts on Monday and his escapade of Monday night appeared to be a fabrication, the jury was warranted in believing that the defendant and the deceased repaired to Williams Lake Monday evening and that the defendant came away from Williams Lake alone Tuesday afternoon after the deceased had been murdered.

Other errors assigned do not justify a reversal or call for discussion.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, without costs, on October 9, 1928.